Janet V. TORRES, Claimant
Below, Appellant,

v.

ALLEN FAMILY FOODS, Employer
Below, Appellee.

No. 125, 1995.

Supreme Court of Delaware.

Submitted: Oct. 26, 1995.
Decided: Dec. 29, 1995.
Rehearing Denied Jan. 31, 1996.

John J. Sullivan, Jr., Schmittinger & Rodriguez, P.A., Dover, for Appellant.

Nancy E. Chrissinger, Tybout, Redfearn & Pell, Wilmington, for Appellee.

Before VEASEY, C.J., WALSH, and BERGER, JJ.

WALSH, Justice:

This is an appeal from a Superior Court affirmance of termination of workers' compensation by the Industrial Accident Board ("Board"). Appellee, Allen Family Foods ("Allen"), sought the termination of the permanent partial disability benefits of the appellant, Janet V. Torres ("Torres"), which resulted from a carpal tunnel condition sustained in the course of her employment with Allen. Before the Board, Torres contended that she was a displaced worker—a contention disputed by Allen. The Board determined that Torres was not, *prima facie,* a displaced worker and that she had failed to demonstrate that she had made a reasonable job search which was unsuccessful because of her injury. The Superior Court correctly found that substantial evidence supported the Board's finding that Torres had failed to meet her burden of proof. Accordingly, we affirm that ruling.

In addition to reviewing the merits of Torres' claim for compensation, the Superior Court considered Torres' allegation that she was deprived of due process of law in the course of her hearing before the Board. The Superior Court found that the Board was within its discretion in refusing to issue subpoenas to all of the employers in a labor market survey. Because the proposed testimony would have been irrelevant to the issues before the Board and because of the importance of allowing the Board flexibility to administer its cases, we affirm that ruling. However, we add the cautionary note that the Industrial Accident Board's discretion to refuse to issue subpoenas on the behalf of parties before it is limited by the requirements of due process and fairness.

## I.

Torres, who is bilingual and a high school graduate, was employed processing chickens by appellee Allen Family Foods. In 1991 she began experiencing pain in her left wrist and was diagnosed in May with left carpal tunnel syndrome and underwent surgery for that condition. Shortly after her return to work in June of 1991, she fell and aggravated the condition of her left wrist. Her doctor diagnosed her as having reflex sympathetic dystrophy. In September of that year, Torres again returned to work but left permanently in March of 1992. It is undisputed that environmental factors aggravated her condition, including the cold temperatures and high humidity at Allen. Although she would be capable of doing some work, physicians for both parties agree that Torres' activity should be restricted to lifting objects weighing less than five pounds with her left hand and avoiding damp and cold workplace climates similar to that at Allen's facility.

Allen retained a vocational rehabilitation specialist to assist Torres in the summer of 1992. After unsuccessfully providing Torres with a number of job leads, the specialist ceased providing leads and commenced a labor market survey, the results of which were testified to before the Board. Torres continued to seek work primarily by utilizing old labor market survey results retained by her attorney on behalf of other clients. In pursuit of these leads, Torres would send a resume and cover letter to employers appearing on these lists for whom she believed she was qualified to work. In the vast majority of her application attempts, Torres did not ascertain whether the employers to which she was applying had current openings, nor did she notify them of her injury.

On September 30, 1992, Allen filed a petition to terminate Torres' total disability benefits on the ground that Torres was physically able to return to work. In order to challenge the findings of the market survey conducted by Allen's vocational rehabilitation specialist, Torres requested that the Board issue subpoenas to all employers identified in that survey. The Board denied this request, citing its discretion under Uniform Rule of Evidence 403, which allows the exclusion of evidence that is needlessly cumulative or to prevent undue delay.[1]

The Board granted Allen's petition to terminate, finding that Torres had not made a *prima facie* showing that she was a displaced worker. According to the Board, Torres did not carry "her burden to demonstrate that she has made a reasonable job search that has not been successful because of her injury." The Board based this conclusion on several facts. First, it noted that Torres was employable within the physical limitations noted above. The Board then turned to the fact that Torres had sent letters of inquiry to firms identified in the labor market survey, which had openings in the past, but not necessarily in the present. This lack of job openings combined with the fact that Torres identified her disability in only two of the letters that she sent led the Board to find that she had not established that she had conducted a reasonable job search which was without success due to her injury.

On appeal to the Superior Court, Torres' claim was consolidated with another appeal

1. Uniform Rule of Evidence 403:
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

from the Industrial Accident Board, *Stauffer v. Kent General Hospital.* Torres argued, *inter alia*, that the Board's failure to issue subpoenas on her behalf abrogated her due process rights, contending that the Board's ruling compromised her ability to present her case before the Board. The Superior Court denied her appeal and affirmed the decision of the Board. *Torres v. Allen Family Foods*, Del.Super., C.A. No. 93A–12–005, 1995 WL 269481 Ridgely, P.J., (Mar. 15, 1995). Because the Superior Court had reversed and remanded the *Stauffer* claim to the Industrial Accident Board, this Court remanded the *Torres* case to verify that the judgment of the Superior Court appealed from was indeed final. This case is now before us after the Superior Court's entry of final judgment.

## II.

On appeal to this Court, Torres reasserts three claims of error made below. First, she argues that the Board violated her due process rights by failing to issue subpoenas on her behalf. In addition, she argues that the Board erred in not according sufficient weight to Allen's refusal to allow her to return to work in a manner within her physical restrictions. Lastly, she argues that the evidence does not support the finding that she did not carry her burden of proof to show that she was a displaced worker. We first address her substantive claims.

### A.

▉ After filing a petition to terminate an employee's total disability benefits, a former employer bears the initial burden of demonstrating that the employee is no longer totally incapacitated for the purpose of working. *Governor Bacon Health Center v. Noll*, Del.Super., 315 A.2d 601, 603 (1974). If the employer satisfies that burden, the employee must show that she is a "displaced worker." A worker is displaced if she "is so handicapped by a compensable injury that [s]he will no longer be employed regularly in any well known branch of the competitive labor market and will require a specially-created job if [s]he is to be steadily employed." *Ham v. Chrysler Corp.*, Del.Supr., 231 A.2d

258, 261 (1967). The employee's "physical impairment, coupled with other factors such as the injured employee's mental capacity, education, training, or age" may constitute a *prima facie* showing that the employee is displaced. *Franklin Fabricators v. Irwin*, Del.Supr., 306 A.2d 734, 737 (1973). However, even if there is insufficient evidence for the employee to show that she is *prima facie* displaced, she is a displaced worker and deemed "totally disabled" for the purposes of the Delaware Workers' Compensation Law, 19 *Del.C.* §§ 2101–2397, if she "has made reasonable efforts to secure suitable employment which have been unsuccessful because of the injury." *Franklin Fabricators*, 306 A.2d at 737. Assuming that the employee can demonstrate that she is displaced, the burden shifts back to the employer to show the availability of work within the employee's capabilities. *Id.*

### B.

▉ Torres contends that the Board should have been persuaded that she met the criteria for "displaced workers" because Allen would not hire her back for different work within her capabilities. While the refusal to rehire is a factor which may "weigh heavily" in the analysis, it is not dispositive. *Chrysler Corporation v. Duff*, Del.Supr., 314 A.2d 915, 917–18 (1973). Furthermore, "given the great variety of factual situations, it is unwise to focus solely on one factor as necessarily decisive. . . ." *Id.* at 918.

Appropriately, the Board decided that this factor was not conclusive. The refusal of Allen to rehire Torres was not indicative of a general lack of jobs. It simply did not make sense for Allen to rehire her given that the cold and damp working conditions at Allen exacerbated her physical condition and contributed to her departure from Allen's employment the second time. The Board's decision not to accord great weight to this factor is justified by the law and by the facts of this case.

### C.

Torres next contends that the Board erred in its determination that she had not satisfied

her burden of showing that she was a displaced worker, i.e., that through her job search she demonstrated that she made reasonable efforts to secure employment which were unsuccessful because of her injury. Indeed, Torres did contact at least 20 employers between the end of 1992 and the first half of 1993. However, the names of those potential employers were obtained from her attorney and were from market surveys used in other cases.

While noting that contacting the employers whose names were provided by her attorney is more effective "than looking in the phone book," the Board was not persuaded that this search established that Torres was a displaced worker. The labor market surveys used by Torres were not current, and only indicated the availability of a job at sometime in the past. In addition, the claimant only mentioned her physical disability on two of her cover letters. Thus, most of the employers she contacted could not have refused to hire her because of her injury since they knew nothing about it.

The Board found that Torres could have better demonstrated that she made "reasonable efforts to secure employment which were unsuccessful because of her injury" if she had contacted employers who actually had openings. *See Franklin Fabricators,* 306 A.2d at 737. Consequently, the Board was not persuaded that Torres had satisfied the requirements to defeat the petition to terminate benefits under the *Franklin Fabricators* standard. After reviewing the record below it is apparent that the Board's determination is supported by substantial evidence and we agree with the Superior Court that it should not be disturbed. *See Histed v. E.I. DuPont de Nemours & Co.,* Del.Supr., 621 A.2d 340, 342 (1993).

### III.

#### A.

█ Torres argues that the Board denied her due process of law when it refused to issue 29 ordinary subpoenas and 29 subpoenas *duces tecum.* Torres apparently requested these subpoenas in an attempt to undermine the survey conducted by Allen's vocational rehabilitation specialist, since the subpoenas were to issue to the employers contacted by the specialist.

█ As a starting point, we note that the Board is not bound by the formal rules of evidence. 19 *Del.C.* § 2121.[2] In order to ensure the efficient adjudication of claims, the Board has the power to make its own rules. Pursuant to that power, the Board may relax the rules of evidence and allow the proceedings to be less formal than a trial. For example, the Board may allow hearsay evidence to be admitted into the record. This allowance is consistent with the purpose of the rule against hearsay, which is to keep from an untrained trier of fact material whose reliability is untrustworthy. *See* 1 John H. Wigmore, *Wigmore on Evidence* § 4b, at 110 (1983). Presumably the Board, with its background and expertise, is able to evaluate evidence without the restrictions and safeguards imparted by the formal rules of evidence.

█ The Board may not, however, relax rules which are designed to ensure fairness of the procedure. "While the nature of the proceedings and the spirit of the Compensation Law justify some relaxation of the technical rules of evidence, nevertheless, it is fundamental that the right to confront witnesses, to cross-examine them, to refute them, and to have a record of their testimony must be accorded unless waived." *General Chemical Div., Allied Chemical & Dye Corp.*

---

**2.** "The Board may make its own rules of procedure for carrying out Part II of this title to the same extent as the Superior Court pursuant to § 561(a) of Title 10." 19 *Del.C.* § 2121(a); *see also* 2B Arthur Larson, *The Law of Workmen's Compensation* § 77A.60 (1995). Pursuant to § 2121(a) the Industrial Accident Board has promulgated Rule 14(B):

The rules of evidence applicable to the Superior Court of the State of Delaware shall be

followed insofar as practicable; however, that evidence will be considered by the Board which, in its opinion, possesses any probative value commonly accepted by reasonably prudent men in the conduct of their affairs. The Board may, in its discretion, disregard any customary rules of evidence and legal procedures so long as such a disregard does not amount to an abuse of its discretion.

*v. Fasano,* 47 Del. 546, 94 A.2d 600, 601 (1953); *accord Air Mod Corp. v. Newton,* 59 Del. 148, 215 A.2d 434, 439 (1965); *Paco v. Am. Leather Mfg. Co.,* N.J.Super.App.Div., 516 A.2d 623, 625 (1986). These rules, such as the right to cross-examine, are designed to guarantee the substantial rights of the parties and are based on fundamental notions of fairness. 3 Arthur Larson, *The Law of Workmen's Compensation* § 79.83(a) (1995). "Nothing is more repugnant to our traditions of justice than to be at the mercy of witnesses one cannot see or challenge, or to have one's rights stand or fall on the basis of unrevealed facts that perhaps could be explained or refuted." *Id.*

 The exclusion of relevant, material, and competent evidence by an administrative agency will be grounds for reversal if that refusal is prejudicial. John Strong, et al., *McCormick on Evidence* § 352, at 513 (4th ed. 1992). However, as the Superior Court noted, no prejudice resulted from not having the surveyed employers testify. Since hearsay was admissible, live testimony by the employers was not necessary to challenge the report of the employer's vocational expert. More importantly, refuting this testimony would not have assisted Torres in carrying her burden. *See supra* part II A. In order to prevail at this stage, Torres would need to show that she made a reasonable job search which was unsuccessful because of her disability. Rebutting Allen's vocational expert would at most cast doubt on Allen's assertion that some jobs were available and would not establish the required elements necessary for Torres to prevail. Inquiry into the availability of jobs was irrelevant at that point since the Board had concluded that she had not established that she was a displaced worker. Consequently, the Board's consideration of this information was harmless error, and Torres' inability to cross-examine surveyed employers was similarly irrelevant.

### B.

 While in this case it was unnecessary for the Board to issue the requested subpoenas, we note that the Board has a basic responsibility to comply with reasonable requests for the issuance of subpoenas to the extent the witnesses' proposed testimony may implicate the fundamental fairness of the proceeding. *See Cross v. Daniels,* 271 Ark. 201, 607 S.W.2d 680, 681 (1980). Although the Superior Court noted, and we agree, that "due process can require procedures less rigorous than those in a trial-type hearing," *Feliciano v. Chater,* D.P.R., 901 F.Supp. 50, 52 (1995); *see Goldberg v. Kelly,* 397 U.S. 254, 267, 90 S.Ct. 1011, 1019, 25 L.Ed.2d 287 (1970), the power to issue subpoenas is an integral part of the administrative process. The Board must respect the decision of a party to use the subpoena process provided for in the statute if the claimant or her counsel, after an informal investigation, has established the need for a witness. *See Moore v. Fulton Paper Co.,* Del.Supr., No. 14, 1995, 663 A.2d 488 Berger, J. (June 23, 1995) (ORDER) (finding that no prejudice and therefore no error resulted from Board's refusal to issue subpoena for records which would not have aided claimants' case).[3] Since the judgment is not one for the Board to make, when counsel is satisfied that a witness is needed, the Board cannot refuse. *See O'Blenis v. Florida Dept. Of Labor and Employment Security,* Fla.App., 388 So.2d 1099, 1100 (1980) (noting that "minimal due process requires the right to subpoena witnesses," and rejecting requirement of "good cause" for the issuance of requested subpoenas).

 We do not encourage the issuance of unnecessary or irrelevant subpoenas. *See Fernandes v. Commonwealth,* Pa. Cmwlth., 53 Pa.Cmwlth. 79, 416 A.2d 644, 646 (1980). Whether or not the issuance of a subpoena is necessary for the Board to fulfill its role in the adjudication of claims resulting from industrial accidents is a determination that must be made on a case by case and witness by witness basis. The Board has at its disposal, and should use, its power to prevent an abuse of process. For example, it may grant a motion to quash the subpoena if

---

**3.** *See also Smith v. Sampson,* Alaska Supr., 816 P.2d 902, 907 (1991) (finding no error in refusal to issue subpoena in administrative hearing when claimant offered no explanation of why evidence was relevant).

the subpoenas are sought unnecessarily or for harassment. In addition, counsel in administrative proceedings are expected to obtain the required testimony or information more economically and informally through informal interviews and depositions.

We conclude in this case that Torres received a fair hearing before the Board. In addition, we find that the Board's conclusions were supported by substantial evidence. Accordingly, we affirm the decision of the Superior Court and uphold the Board's termination of Torres' disability benefits.